UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL ANTHONY BURKE, | : | |
| Plaintiff, | : | |
| v. | : | Civil No. 3:07cv820 (MRK) |
| APT FOUNDATION ET AL., | : | |
| Defendants. | : | |

### RULING AND ORDER

Pending before the Court is Defendants' Motion to Dismiss [doc. # 13] and Mr. Burke's Motion to Appoint Counsel [doc. # 5]. In their motion, Defendants argue that Mr. Burke's claims should be dismissed under *Federal Rules of Civil Procedure* 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim. Having considered the parties' briefs, including Mr. Burke's responses [doc. ## 16, 22] to Defendants' motion to dismiss, the Court GRANTS Defendants' motion to dismiss and DENIES AS MOOT Mr. Burke's motion to appoint counsel.[1] *See Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986) ("In deciding whether to appoint counsel . . . , the district judge should first determine whether the indigent's position seems likely to be of substance.").

---

[1] Mr. Burke has filed an appeal of the order [doc. # 6] transferring this case from the docket of Judge Christopher Droney, who is based in Hartford, to the docket of this Court, which is based in New Haven. Nevertheless, this Court retains jurisdiction over the underlying suit while that appeal, which is not from a final judgment, is pending. *See Connecticut v. Spellings*, 453 F. Supp. 2d 459, 467-68 (D. Conn. 2006) (noting that even if the order of transfer is properly appealable, the "filing of a notice of appeal only divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal").

# I.

The following facts are taken from Mr. Burke's Complaint.[2] Mr. Burke was hired as a Rehabilitation Counselor II by APT Foundation ("APT") in October 2006, and was discharged in mid-March 2007. Mr. Burke identifies seven instances of alleged discriminatory action by APT. The first is that he was placed in an office located in a corridor away from the other rehabilitation counselors. Mr. Burke also alleges in his complaint that the office was dirty and unpainted. The second instance of alleged discrimination is that Mr. Burke, unlike the other rehabilitation counselors, was allegedly placed in supervision for longer than the orientation period. The third is that Mr. Burke was denied a 3% pay raise, which he claims APT made available to other rehabilitation counselors with certain credentials also possessed by Mr. Burke. Fourth, Mr. Burke claims that he applied for two promotions, director of a new access center and therapist at the Daytop Program in Bridgeport, but was unfairly denied both positions. The fifth instance of alleged discrimination is that Mr. Burke was assigned to a retention committee, allegedly without his knowledge or permission, and was pressured into remaining on the committee against his will, despite the fact that attendance was supposed to be voluntary. The Court reads the sixth and seventh claims of Mr. Burke's complaint to allege that Mr. Burke was subjected to racial name-calling and other verbal harassment in APT's Human Resources office. Mr. Burke claims that Kathy Floyd, an APT employee and Mr. Burke's supervisor, told Mr. Burke that if he did not attend retention

---

[2] The Court notes for the record that Mr. Burke may be presumed to be familiar with the pleading requirements under the *Federal Rules of Civil Procedure*, as he has filed several lawsuits in this district. *See, e.g.*, *Burke v. Also Cornerstone*, 3:07-cv-889-JCH; *Burke v. Conn. Renaissance*, 3:07-cv-906-JBA; *Burke v. Miron*, 3:07-cv-1181-RNC; *Burke v. Standard Oil of Conn., Inc.*, 3:07-mc-132-HBF; *Burke v. Mental Health & Addiction Svcs.*, 3:07-mc-135-WIG; *Burke v. Barrister Law Group*, 3:07-mc-142-HBF; *Burke v. Willinger, Willinger & Bucci PC*, 3:07-mc-144-WIG; *Burke v. Aniskovich*, 3:07-mc-154-HBF.

committee meetings and otherwise comply with her wishes, she would encourage Mr. Burke's patients, recovering heroin addicts, to harm him. Mr. Burke called the police later that afternoon to report the threat, but states that the police report did not accurately reflect his concerns and was biased in APT's favor. In the sixth instance of alleged discrimination, Mr. Burke claims that he was unfairly suspended with pay in retaliation for having filed his complaint with the New Haven police, and that the APT employee who suspended him also spread rumors to the effect that Mr. Burke had a medical condition that might affect his work performance. Mr. Burke also alleges that he was not paid all the money owed him at the time of his termination and that his clinical books were removed from his office. Although Mr. Burke was paid the list price of the books, he states that the books had greater personal value to him due to notes and other information he had added to the text. Seventh and finally, Mr. Burke claims that APT employees made false statements regarding the reasons for his discharge from APT at a hearing in which Mr. Burke appealed the denial of his application for unemployment benefits.

Mr. Burke filed an internal grievance with APT regarding the police report and his suspension with pay, and after the grievance was denied, he filed this lawsuit. Mr. Burke alleges numerous claims against APT and several of its employees, Carolyn Parler-McRae, Jane Tendler, Kathy Floyd, Ann Dubois-Frazier, and Bob Freeman.

## II.

*Federal Rule of Civil Procedure* 8(a) requires only that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." In considering a motion to dismiss under *Federal Rule of Civil Procedure* 12(b), the Court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Gorman v.*

3

*Consol. Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007) (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)). Further, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quotation marks and alteration omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))).

The Supreme Court recently sought to clarify the pleading requirements a complaint must meet in order to avoid dismissal in *Bell Atlantic v. Twombly*, 127 S. Ct. 1955. There, the Supreme Court explicitly repudiated an oft-quoted description of the standard for motions to dismiss, namely the language in *Conley v. Gibson*, 355 U.S. at 45-46, explaining "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Bell Atlantic*, 127 S. Ct. at 1969. According to the Supreme Court in *Bell Atlantic*, that "phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.*

The Second Circuit examined *Bell Atlantic* in a recent decision in which the circuit noted that *Bell Atlantic*'s "conflicting signals create some uncertainty as to the intended scope of the [Supreme] Court's decision." *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007). Nevertheless, the Second Circuit concluded that "[a]fter careful consideration of the [Supreme] Court's opinion and the conflicting signals from it that we have identified, we believe that the Court is not requiring a universal standard of heightened fact pleading." *Id.* Instead, *Bell Atlantic* requires a "flexible

4

'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Id.* at 157-58. Thus, to survive a motion to dismiss under "the plausibility standard of *Bell Atlantic*, a conclusory allegation concerning some elements of a plaintiff's claim might need to be fleshed out by a plaintiff's response to a defendant's motion for a more definite statement." *Id.* at 158. Even when a complaint survives a motion to dismiss, courts should be mindful of the need to fashion discovery and motion deadlines to account for the requirements of the case and the defenses asserted. *See id.* at 159 (Courts *"must* exercise [their] discretion in a way that protects the substance of the qualified immunity defense . . . so that officials or former officials are not subjected to unnecessary and burdensome discovery or trial proceedings.") (quotation marks omitted).

### III.

Mr. Burke states in his complaint that he is raising claims under 18 U.S.C. §§ 241, 242, 246, and 371, and the Ku Klux Klan Act of 1871, now codified at 42 U.S.C. §§ 1983, 1985, and 1986.[3] *See Virginia v. Black*, 538 U.S. 343, 353 (2003). The Court will first address Mr. Burke's claims under Title 18 of the United States Code.

Each of the statutory provisions under Title 18 identified by Mr. Burke are criminal statutes. As such, they do not provide a private right of action to civil litigants. *See, e.g.*, *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994) (holding that 18 U.S.C. §§ 242 and 1385 are criminal statutes and do not provide a private cause of action); *Ammann v. Connecticut*, No. 3:04CV1647 (MRK), 2005 WL 465401, at *5 (D. Conn. Feb. 10, 2005) (holding that no private

---

[3] Mr. Burke also cites 42 U.S.C. § 1985(3) independently. The Court will consider this claim to be subsumed under the more general heading of the Ku Klux Klan Act.

5

cause of action exists under 18 U.S.C. §§ 241, 242). Accordingly, the Court dismisses Mr. Burke's claims under 18 U.S.C. §§ 241, 242, 246, and 371.

The Court next turns to Mr. Burke's claims under the Ku Klux Klan Act. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Thus, "'[i]n order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law.'" *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). Mr. Burke does not allege that either APT or its employees are state actors. Thus, all of the defendants here are beyond the reach of § 1983 liability, unless they engaged in conduct that can be characterized as state action or they acted in concert with a state actor to violate Mr. Burke's constitutional rights. *Id.*

This Court has previously considered the state action doctrine as applied to a private actor in *Szekeres v. Schaeffer*, 304 F. Supp. 2d. 296, 304-05 (D. Conn. 2003). As *Szekeres* emphasizes, when analyzing allegations of state action, the court must begin "'by identifying the specific conduct of which the plaintiff complains.'" *Id*. at 306 (quoting *Tancredi v. Met. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003)). "In order to satisfy the state action requirement where the defendant is a private entity, the allegedly unconstitutional conduct must be 'fairly attributable' to the state." *Tancredi*, 316 F.3d at 312. "Conduct that is ostensibly private can be fairly attributed to the state only if there is 'such a close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Brentwood Acad. v. Tenn. Secondary Sch.*

6

*Athletic Ass'n*, 531 U.S. 288, 295 (2001)). Accordingly, "[s]tate action may properly be found where the state exercises 'coercive power' over, is 'entwined in [the] management or control' of, or provides 'significant encouragement, either overt or covert' to, a private actor, or where the private actor 'operates as a willful participant in joint activity with the State or its agents,' is 'controlled by an agency of the State,' has been delegated a '"public function' by the state, or is 'entwined with governmental policies.'" *Id.* at 313 (quoting *Brentwood Acad.,* 531 U.S. at 296).

Even if alleged conduct by a private party does not amount to state action for the purposes of § 1983 liability, a private party may also be subject to suit under § 1983 if the private party acted in concert or conspired with a state actor to violate a plaintiff's constitutional rights. "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello*, 292 F.3d at 324. "Put differently, a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). However, in order to survive a motion to dismiss on a § 1983 conspiracy claim, a plaintiff "must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* at 324-25 (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). "In addition, 'complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'" *Id.* (citing *Dwares v. City of New York*, 985 F.2d 94, 199 (2d Cir. 1993)). "A private party involved in a conspiracy with state actors

7

can be liable under § 1983, but to sustain such a claim, the plaintiff must allege facts showing an agreement or meeting of the minds between the state actor and private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right." *Colon v. Town of West Hartford*, No. Civ. 3:00CV168, 2001 WL 45464, at *7 (D. Conn. Jan. 5, 2001).

Mr. Burke has made no specific allegations that any APT employees or APT itself were acting under color of state law when Mr. Burke suffered the alleged violations of his constitutional or federal statutory rights. The only statement that is possibly relevant is found in the letter Mr. Burke attached to his Notice of Appeal of the order of transfer [doc. #25], in which he states that APT is funded by the Connecticut Department of Mental Health and Addiction Services. However, as this Court has previously noted, mere funding by the state is insufficient to show that a defendant was acting under color of state law. *See, e.g.*, *Szekeres*, 304 F. Supp. 2d at 307 ("[T]he Supreme Court has repeatedly made clear that government funding of a private entity, no matter how extensive, is insufficient in and of itself to establish state action."). Thus, Mr. Burke has failed to allege a plausible claim under 42 U.S.C. § 1983 that any of the Defendants are state actors, or that any of the private Defendants acted in concert with a state actor to deprive him of his constitutional or federal statutory rights.[4]

---

[4] Although Mr. Burke does complain about his treatment by New Haven police officers, who are clearly state actors, he does not allege that any of the named Defendants here acted at any police officer's behest, or in concert with the police, or in a manner normally exclusively reserved to the government. Thus, any claim under § 1983 that Mr. Burke may have with regard to this incident lies solely against the New Haven police department and/or its officers, none of whom are named defendants in this action.

The only subsection of § 1985 that is potentially applicable to this case is subsection 3, entitled "Depriving a person of rights or privileges."[5] "The elements of a claim under § 1985(3) are: '(1) a conspiracy; (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . .; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States.'" *Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000) (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs., Inc.* 7 F.3d 1085, 1087 (2d Cir. 1993) (*per curiam*)). In addition, the Second Circuit has stated that a § 1985(3) conspiracy "must be motivated by racial animus." *Brown*, 221 F.3d at 341; *see Mian*, 7 F.3d at 1088.

Although Mr. Burke alleges that Defendants were motivated by racial animus, he fails to assert a plausible claim of conspiracy among Defendants. As noted above with respect to conspiracy claims under § 1983, "'diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'" *Ciambriello*, 292 F.3d at 324 (citing *Dwares v. City of New York*, 985 F.2d 94, 199 (2d Cir. 1993)). Not only has Mr. Burke failed to allege any specific instances of misconduct, he has failed even clearly to allege a conspiracy at all. Apart from the fact that all the individual Defendants worked at APT, Mr. Burke has provided no information that would suggest a meeting of the minds or other concerted action by Defendants to deprive Mr. Burke of equal protection of the laws on the basis of racial animus. Under *Bell Atlantic*, then, Mr. Burke's § 1985(3) claim must fail. *See Iqbal*, 490 F.3d at 177 (distinguishing the more detailed allegation of conspiracy

---

[5] 42 U.S.C. § 1985(1) addresses conspiracies to prevent a federal officer from performing his duties, and § 1985(2) addresses conspiracies to deter parties or witnesses from attending federal court or testifying truly therein. There are no allegations in Mr. Burke's complaint that could possibly be construed as falling under either of these subsections.

in *Iqbal* from the "bare allegation of conspiracy supported only by an allegation of conduct that is readily explained as individual action plausibly taken in the actors' own economic interests" at issue in the antitrust context of *Bell Atlantic*).

Mr. Burke's final claim under the Klu Klux Klan Act rests on 42 U.S.C. § 1986. That section imposes liability on "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [i.e., 42 U.S.C. § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed." 42 U.S.C. § 1986. The claim must also fail. First, Mr. Burke fails entirely to allege which Defendants knew of and could have prevented which wrongs. Second, because claims under § 1986 are dependent on the existence of an underlying § 1985 violation, the inadequacy of Mr. Burke's allegations under § 1985 is also fatal to his allegations under § 1986. *See Mian*, 7 F.3d at 1088 ("[A] § 1986 claim must be predicated upon a valid § 1985 claim.").

## IV.

Mr. Burke is clearly unhappy with his treatment and dismissal by APT, and the Court is sympathetic to his concerns. However, based on the allegations in Mr. Burke's complaint, the Court concludes that his claims, as currently alleged, are not viable and must be dismissed. The Court notes, without commenting on the potential strength of any such claims, that since Mr. Burke appears to be concerned about his treatment by his employer, he may be able to state a cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, or under another federal or state employment-related statute. Accordingly, the Court will give Mr. Burke an opportunity to move to amend his complaint in response to the Court's ruling, *see Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.

2000)**,** but if Mr. Burke chooses to do so, he must file any such motion to amend **on or before October 5, 2007**. The Court also warns Mr. Burke that any amended pleading must take into account the issues discussed in the Court's ruling.

For the reasons given, Defendants' Motion to Dismiss [doc. # 13] is GRANTED, and Mr. Burke's Motion to Appoint Counsel [doc. # 5] is DENIED AS MOOT.

IT IS SO ORDERED.

/s/      Mark R. Kravitz      
United States District Judge

**Dated at New Haven, Connecticut: September 12, 2007.**